# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

VERNAY LABORATORIES, INC.,

       Plaintiff,  :  Case No. 3:10-cv-259

                                       District Judge Timothy S. Black
   -vs-                                    Magistrate Judge Michael R. Merz

                                     :

TRAVELERS PROPERTY CASUALTY
 COMPANY OF AMERICA, et al.,

       Defendants.

## REPORT AND RECOMMENDATIONS

      This case is before the Court on Defendants' Motion for Judgment on the Pleadings (Doc. No. 11) which Plaintiff opposes (Doc. No. 12). Defendants have filed a Reply in Support (Doc. No. 13).

      This case has been referred to the undersigned by Judge Black for all pre-trial motions, whether dispositive or not, except for summary judgment motions (Order of Referral, Doc. No. 9). A motion for judgment on the pleadings is classified as dispositive in the Magistrates' Act and thus requires a report and recommendations. 28 U.S.C. § 636(b).

      The Motion and Memorandum in Opposition are supported by extensive documentation. Defendants assert that the Court may properly consider the documentation attached to the Motion on a motion for judgment on the pleadings without converting the motion to one for summary judgment because it is "explicitly referenced and relied on by Vernay in its Complaint" (Motion,

1

Doc. No. 11, PageID 59, n. 1, citing *Greenberg v. Life Ins. Co.*, 177 F.3d 507 (6th Cir. 1999)[1].) Vernay does not object to this portion of the Motion. Defendants in their Reply, in turn, do not object to the Court's considering the documents attached to Vernay's Memorandum in Opposition.

In ruling on a motion for judgment on the pleadings, the Court must accept all well-pleaded material allegations of the complaint as true. *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir. 2007); *Ziegler v. IBP Hog Mkt., Inc*., 249 F.3d 509, 511-12 (6th Cir. 2001);*Paskvan v. City of Cleveland Civil Serv. Comm'n.*, 946 F.2d 1233, 1235 (6th Cir. 1991)(citing *Beal v. Missouri Pacific R.R.,* 312 U.S. 45, 51 (1941)). The Court must then decide whether the moving party is entitled to judgment as a matter of law. *Lavado v. Keohane,* 992 F.2d 601, 605 (6th Cir. 1993). This is the same standard applied in deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Tucker v. Middleburg-Legacy Place,* 539 F.3d 545, 549 (6th Cir. 2008); *EEOC v. J. H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001).

The test for dismissal under Fed. R. Civ. P. 12(b)(6) was recently re-stated by the Supreme Court:

> Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)(" Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

---

[1] Although *Greenberg* was decided under Fed. R. Civ. P. 12(b)(6), the difference is immaterial, especially where, as here, neither party has objected or requested that the motion be converted to one for summary judgment.

*Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 555 (2007).

> [W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, " 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.' " 5 Wright & Miller § 1216, at 233-234 (quoting *Daves v. Hawaiian Dredging Co.*, 114 F.Supp. 643, 645 (D. Hawaii 1953) ); see also *Dura [Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005),, at 346, 125 S.Ct. 1627; *Asahi Glass Co. v. Pentech Pharmaceuticals, Inc* ., 289 F.Supp.2d 986, 995 (N.D.Ill.2003) (Posner, J., sitting by designation) ("[S]ome threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase").

*Bell Atlantic*, 550 U.S. at 558; *see also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502 F.3d 545 (6th Cir. 2007). To survive a motion to dismiss under Rule 12(b)(6), the allegations in a complaint "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008), quoting *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)(emphasis in original).

*Bell Atlantic* overruled *Conley v. Gibson*, 355 U.S. 41, 45-46, specifically disapproving of the proposition that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

In *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949-1950 ( 2009), the Supreme Court made it clear that *Twombly* applies in all areas of federal law and not just in the antitrust context in which it was announced. Following *Iqbal*, district courts faced with motions to dismiss must first accept as true all of the factual allegations contained in a complaint. This requirement "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 550 U.S. at 555.  Second, only a complaint that

states a plausible claim for relief survives a motion to dismiss. 550 U.S. at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Iqbal,* ___ U.S. ___, 129 S. Ct. 1937, 1949-1950 ( 2009); *Tam Travel, Inc. v. Delta Airlines, Inc. (In re Travel Agent Comm'n Antitrust Litig.)*, 583 F.3d 896, 903 (6th Cir. 2009). Under *Iqbal*, a civil complaint will only survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. ... Exactly how implausible is "implausible" remains to be seen, as such a malleable standard will have to be worked out in practice." *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629-630 (6th Cir. 2009).

The dispute between the parties arises from an underlying lawsuit brought by Marc and Henrietta Perry and Marc and Sunita Upchurch against Vernay Laboratories, Inc., and The Payne Firm, Inc., in August, 2006, in the Greene County Common Pleas Court (the "Perry/Upchurch Litigation"). Shortly after that court denied Vernay's motion to dismiss, Vernay tendered its defense of the case to Travelers and demanded indemnification (July 9, 2007, letter from Joseph Lonardo to Edward Kraine, enclosing Perry/Upchurch Complaint, Ex. 30 to Motion, Doc. No. 11, PageID 3011-3044.) Vernay was sued as the generator of "Vernay Waste" which was alleged to have been released into the soil, surface, and groundwater surrounding Vernay's plant in Yellow Springs, Ohio; The Payne Firm was sued as Vernay's environmental consultant. In its initial demand letter, Vernay recognized that the insurance policies in question contained a pollution exclusion, but argued that the "separate torts and allegations which do not relate to the handling, disposal, or release of contaminants are clearly covered by the policy." *Id.* PageID 3013.

Defendants responded to the demand by claiming benefit of the "Pollution Exclusion" and

denying coverage.[2]  Having settled the Perry/Upchurch Litigation, Vernay sued Defendants in the Greene County Common Pleas Court, asserting an indemnification claim, a breach of contract claim, and a bad faith processing of insurance claim (Complaint, Doc. No. 5).  Defendants removed the case to this Court asserting original subject matter jurisdiction in diversity (Notice of Removal, Doc. No. 1).  Vernay's own Complaint alleges diverse citizenship of the parties and an amount in controversy in excess of $75,000, and it has not filed a motion to remand.  The Court finds it has subject matter jurisdiction under 28 U.S.C. § 1332.

A federal court exercising supplemental or diversity subject matter jurisdiction over state law claims must apply state substantive law to those claims.  28 U.S.C. §1652; *Gasperini v. Center for Humanities, Inc.*, 528 U.S. 415, 427, n. 7 (1996); *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), overruling *Swift v. Tyson*, 41 U.S. 1 (1841)(Story, J., holding that "the laws of the several states" in the Judiciary Act of 1789 means only the statutory law of the States).  In applying state law, the Sixth Circuit follows the law of the State as announced by that State's supreme court. *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008);  *Ray Industries, Inc. v. Liberty Mut. Ins. Co.*, 974 F.2d 754, 758 (6th Cir. 1992);  *Miles v. Kohli & Kaliher Assocs.,* 917 F.2d 235, 241 (6th Cir. 1990). "Where the state supreme court has not spoken, our task is to discern, from all available sources, how that court would respond if confronted with the issue." *Id.;  In re Akron-Cleveland Auto Rental,  Inc.,* 921 F.2d 659, 662 (6th Cir. 1990); *Bailey v. V & O Press Co*., 770 F.2d 601 (6th Cir. 1985); *Angelotta v. American Broadcasting Corp.,* 820 F.2d 806 (1987). The available data to be considered if the highest court has not spoken include relevant dicta from the state supreme court, decisional law of appellate courts, restatements of law, law review commentaries,

---

[2]There are a number of different insurance policies in suit, all of which are referred to in the Complaint and attached as exhibits.  Defendants assert that the Pollution Exclusion in each of them is in "substantially identical language."  (Motion, Doc. No. 11, PageID 63.)  Vernay does not dispute this characterization.

and the "majority rule" among other States.  *Bailey*, 770 F.2d at 604. "Where a state's highest court has not spoken on a precise issue, a federal court may not disregard a decision of the state appellate court on  point, unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1485 (6th Cir.1989); *accord Northland Ins. Co. v. Guardsman Products, Inc*., 141 F.3d 612, 617 (6th Cir.1998). This rule applies regardless of whether the appellate court decision is published or unpublished. *See Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 328 (6th Cir.2000); *Puckett,* 889 F.2d at 1485. *Ziegler v. IBP Hog Market*, 249 F.3d 509, 517 (6th Cir. 2001).

### The Parties' Positions

Defendants state their position succinctly: "[b]ecause all of the underlying claims [in the Perry/Upchurch Litigation] arose out of the seepage or release of the Vernay Waste, all of these claims are subject to the Pollution Exclusion."  (Motion, Doc. No. 11, PageID 64.)

The Pollution Exclusion precludes coverage for "'bodily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' ... [a]t or from any premises, site or location which is or was at the time owned or occupied by, or rented or loaned to, any insured." (Quoted at Motion, Doc. No. 11, PageID 67.) Defendants assert that this language is customarily referred to as an "absolute pollution exclusion" which has been found to be unambiguous by the Ohio courts. *Id.*  The Perry/Upchurch claims said by Vernay to be independent – negligent misrepresentation, negligent misrepresentation involving risk of physical harm, conscious misrepresentation involving risk of physical harm, civil conspiracy, intentional infliction of emotional distress, negligent infliction of emotional distress, and abnormally dangerous or ultra hazardous activity – are asserted by Defendants to be included within the

Pollution Exclusion under the analysis in *Danis v. Great Am. Ins. Co.,* 159 Ohio App. 3d 119 (Ohio App. 2d Dist. 2004). (Motion, Doc. No. 11, PageID 68-73.)

Vernay offers a number of responses to the Motion. First of all, it claims Defendants have waived their independent tort argument by not raising it in the voluminous correspondence between the parties engendered by the Perry/Upchurch Litigation (Memo Opp., Doc. No. 12, PageID 3068-3069). To support this argument, it wants "discovery on the claims handling conduct by an experienced Travelers claims representative." *Id.* at PageID 3069.

Secondly Vernay claims this case is distinguishable from *Danis, supra*. In the Perry/Upchurch Litigation, Vernay and Payne were sued for misrepresentation and civil conspiracy, "which claims relate to conduct between Vernay and The Payne Firm which has nothing to do with polluting activities which occurred many years ago." *Id.* PageID 3070. The relationship between the environmental claims and the other independent tort claims is said to create a question of fact, precluding judgment on the pleadings.

Thirdly, Vernay asserts Ohio courts have found the Pollution Exclusion clause to be ambiguous. *Id.* at 3073, citing *Anderson v. Highland House,* 93 Ohio St. 3d 547 (2001), and *Bosserman Aviation Equipt. v. United States Liability Ins.*, 183 Ohio App. 3d 29 (Ohio App. 3rd Dist. 2009). Fourth, it argues Travelers duty to defend is separate from and broader than its duty to indemnify under the policies and questions why Defendants did not cite the *Danis* case in their denials of coverage. *Id.* PageID 3073-3076.

## Analysis

Defendants' position is completely consistent with the two leading decisions cited by both parties, *Danis v. Great Am. Ins. Co.,* 159 Ohio App. 3d 119 (Ohio App. 2d Dist. 2004), and *Owens*

7

*Corning v. National Union Fire Ins. Co.*, 1998 U.S. App. LEXIS 26233 (6th Cir. Oct. 13, 1998).

*Owens Corning* arose out of a class action shareholders Rule 10(b)(5) suit against the company and six of its officers and directors over their alleged misrepresentations in filings with the Securities and Exchange Commission relating to the company's financial exposure for asbestos claims. Owens Corning filed a claim with National Union under its directors and officers' policy. National Union denied coverage on the basis of a standard-form endorsement reading:

> In consideration of the premium charged, it is hereby understood and agreed that this Policy does not extend to or provide coverage or indemnity for any claim directly or indirectly including but not limited to shareholder derivative suits and/or representative class action suits based upon arising out of or related to:
>
> A) Asbestos or any asbestos related injury or damage; or
>
> B) Any alleged act, error, omission or duty involving asbestos its use, exposure, presence, existence, detection, removal, elimination or avoidance; or
>
> C) The use, exposure, presence, existence, detection, removal, elimination or avoidance or asbestos in any environment, building or structure.

*Id.* at *5-6. Applying Ohio law, Judge Gilman wrote for the court:

> Under Ohio law, "nothing but a clear and unambiguous expression in an exception clause, amounting to a necessity for it, will justify a court in holding it utterly inconsistent with the preceding general coverage clauses." *Home Indem. Co. v. Village of Plymouth*, 146 Ohio St. 96, 64 N.E.2d 248, 251 (Ohio 1945). Phrased another way, an exclusion provision is to be given effect only if its language is specific, clear, and exact. *See United States Fidelity & Guar. Co. v. Lightning Rod Mut. Ins. Co.*, 80 Ohio St. 3d 584, 687 N.E.2d 717, 719 (Ohio 1997) (quoting *Lane v. Grange Mut. Cos.,* 45 Ohio St. 3d 63, 543 N.E.2d 488, 490 (Ohio 1989)).

*Id.* at *9. The court concluded the coverage was not excluded by the asbestos clause because the underlying shareholders' claim was not "based upon," or "related to," and did not arise out of the use of asbestos. Rather, it arose out of and was based on misrepresentations to the SEC and thus to shareholders. That is, the alleged misrepresentations "broke the chain of causation linking the

8

[shareholders] claim to asbestos" *Id.* at *13-14. Thus the shareholders claim was held not to be excluded from coverage by the asbestos clause.

Proving that the tracks of *Erie Railroad* run in both directions, the Ohio Second District Court of Appeals in *Danis* relied in substantial part on *Owens Corning*, but reached the opposite conclusion that coverage in that case was effectively excluded by the pollution exclusion clause essentially because the causal connection was close enough: "The claims against both corporate and individual Danis defendants are directly related to, and arise from claims for pollution damage." 159 Ohio App. 3d at 136.

In this case all of the harm claimed in the Perry/Upchurch Litigation was caused by the impact of the Vernay Waste on the plaintiffs and their property. The Perry/Upchurch Complaint of course describes a series of events relating to the Vernay Waste, including its creation and release and then the failure of Vernay and its environmental consultant Payne to stop the spread of the Vernay Waste and to inform those in its path. The Perry/Upchurch Litigation is not a claim by, for example, shareholders of Vernay about securities filings misrepresentations about environmental matters, ala *Owens Corning*.

Vernay's claim that the pollution exclusion clause is fatally ambiguous is also not persuasive. In *Andersen v. Highland House Co.*, 93 Ohio St. 3d 547 (2001), the Ohio Supreme Court held the pollution exclusion clause did not exclude coverage liability for residential carbon monoxide release and consequent death and personal injury. Discussing the history of the pollution exclusion standard clause, Justice Resnick noted that residential carbon monoxide poisoning cases were not within the general intendment of the exclusion. Therefore it held "carbon monoxide emitted from a malfunctioning residential heater is not a pollutant under the pollution exclusion of a comprehensive general liability policy unless specifically enumerated as such." It thereupon reinstated the judgment of the trial court construing the language of the policy in favor of the insured without suggesting

there was any ambiguity which required trial.

In *Bosserman Aviation Equipt. v. United States Liability Ins.*, 183 Ohio App. 3d 29 (Ohio App. 3rd Dist. 2009), the insurer sought to have the court apply the pollution exclusion to a personal injury claim arising from workplace exposure to aviation fuel. Here also the appellate court interpreted the pollution exclusion clause not to cover this situation because, although aviation fuel could qualify as a pollutant, exposure to it in the workplace was a localized injury which did not involve "'discharge, dispersal, seepage, migration, release or escape' of the aircraft fuel or its fumes." *Id.*, citing both *Anderson* and *Lumbermens Mut. Cas. Co. v. S-W Industries, Inc.*, 39 F.3d 1324 (6th Cir. 1994).

Lastly, Vernay's argument that its claim to a defense must be distinguished from its claim for indemnity is unavailing. As Defendants point out, if there is no coverage, there is neither an obligation to defend nor to indemnify. *See Park-Ohio Indus., Inc. v. Tocco, Inc,* 975 F.2d 1215 (6th Cir. 1994).

**Conclusion**

In accordance with the foregoing analysis, it is respectfully recommended that Defendants be granted judgment on the pleadings and that the Complaint herein be dismissed with prejudice.
November 18, 2010.

s/ **Michael R. Merz**
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).